# In the United States Court of Federal Claims

No. 09-531T

(Filed: January 5, 2012)

```
* * * * * * * * * * * * * * * * * * * * * * * * * * * *
                                          *
SEVERINO MARTINEZ,                        *
d/b/a MARTINEZ TRUCKING,                  *
                                          *
                Plaintiff,                *   Taxes; Section 530 of the Revenue
                                          *   Act of 1978 "safe haven"; proof of
                                          *   timely delivery; physical delivery
         v.                               *   rule; 26 U.S.C. § 7502 exceptions to
                                          *   physical delivery rule; common law
THE UNITED STATES,                        *   mailbox rule.
                                          *
                Defendant.                *
                                          *
* * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

*Cruz Saavedra*, Law Office of Cruz Saavedra, San Pedro, CA, for plaintiff.

*S. Starling Marshall*, United States Department of Justice, Tax Division, Court of Federal Claims Section, Washington, DC, with whom were *John A. DiCicco*, Principal Deputy Assistant Attorney General, and *Steven I. Frahm*, Chief, Court of Federal Claims Section, for defendant. *David R. House*, of counsel.

## OPINION

MARGOLIS, *Senior Judge*.

      This case arises out of the failure of plaintiff Severino Martinez, d/b/a Martinez Trucking, to pay federal employment taxes for his truck drivers. Plaintiff admits that he originally owed these taxes, but seeks "safe haven" protection under Section 530 of the Revenue Act of 1978. Defendant the United States, acting through the Internal Revenue Service ("IRS"), contends that plaintiff fails to meet Section 530's reporting consistency requirement because he did not timely file form 1099 returns for his drivers. Defendant argues that under the "physical delivery rule," a return is filed when the IRS physically receives it and that 26 U.S.C. § 7502 provides the only exceptions (timely postmark or "registered" mail). Plaintiff admits he cannot prove timely delivery under the physical delivery rule or either § 7502 exception, but argues that he can prove timely delivery under the common law mailbox rule with proof of timely and proper mailing.

      The Court held a one day trial in Washington, D.C. on July 12, 2011. The parties presented evidence and later submitted proposed findings of fact and conclusions of law. After

carefully reviewing the parties' evidence and briefs, the Court finds that § 7502 provides the only exceptions to the physical delivery rule and that plaintiff cannot prove timely delivery through the mailbox rule. Thus, he cannot show reporting consistency and is not entitled to Section 530 relief. The Court also finds that even if plaintiff could invoke the mailbox rule, he would still fail to prove timely delivery of the 1099 returns because he failed to prove timely and proper mailing.

**I. BACKGROUND**

Plaintiff ran a sole proprietorship named "Martinez Trucking," from 1987 until 2000.[1] He hired drivers to deliver goods within Southern California. Through 1993, he treated his drivers as independent contractors rather than employees, believing that this was standard practice in the area. He did not pay federal employment taxes for his drivers for 1988 and 1989, nor did he file form 1099 returns to report his payments to his drivers as payments to independent contractors.[2] Defendant audited plaintiff and determined that plaintiff's drivers were employees. In November 1992, it assessed plaintiff employment taxes for 1988 and 1989 including Federal Insurance Contributions Act[3] and Federal Unemployment Tax Act[4] taxes. Plaintiff paid the assessments in full. Following that examination, plaintiff spoke with other drivers in the area who told him he could treat drivers as independent contractors if he annually filed 1099 returns and distributed copies to his drivers. He began doing so in 1993.

In 1997, defendant began examining plaintiff for tax years 1995 and 1996. It again determined that plaintiff's drivers were employees and that plaintiff failed to pay federal employment taxes. Plaintiff appealed to the IRS Appeals Office, but in 2001 the Office upheld the examination's findings. In total, defendant assessed plaintiff for $348,214.77 for 1995 and $319,103.25 for 1996 in unpaid taxes, penalties, and interest. On August 20, 2008 and September 8, 2008, plaintiff made payments to defendant toward the assessments. These payments totaled $2,400, representing the total employment taxes due for one worker for 1995 and 1996. On September 15, 2008, plaintiff filed refund claims with defendant for these amounts. On June 17, 2009, defendant denied plaintiff's refund claims.

On August 13, 2009, plaintiff filed a complaint in this Court seeking a refund of $2,400. On January 11, 2010, defendant filed a counterclaim seeking $662,496.36 for the 1995 and 1996

---

[1] In 2000, Martinez Trucking became a corporation in which plaintiff is currently an operations manager. (Joint Stip. ¶ 2; Trial Transcript ("Tr.") at 19.)

[2] Persons engaged in business must file 1099 returns with the IRS for all independent contractors that they pay $600 or more in a taxable year. 26 U.S.C. § 6041(a); 26 C.F.R. § 1.6041-1(a)(2).

[3] *See* 26 U.S.C. §§ 3101-3128.

[4] *See* 26 U.S.C. §§ 3301-3311.

assessments. Plaintiff contends that he is entitled to "safe haven" relief from the assessments under Section 530 of the Revenue Act of 1978[5] because he consistently treated his drivers as independent contractors and had a reasonable basis for doing so. Defendant now concedes that plaintiff qualifies for relief from the 1995 assessment, but contends that plaintiff does not qualify for relief from the 1996 assessment because he did not meet Section 530's reporting consistency requirement in that year.

## II. LEGAL ANALYSIS

Under Section 530, a taxpayer that incorrectly treats an employee as an independent contractor is nevertheless exempt from employment tax liability if it meets three requirements: (1) it has not treated any individual in a substantially similar position as an employee ("substantial consistency"), (2) it has filed all required federal tax returns on a basis consistent

---

[5] The relevant portion of Section 530 provides:

> (a) Termination of certain employment tax liability.
>  (1) In general. If—
>   (A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period, and
>   (B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee, then, for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.
>  (2) Statutory standards providing one method of satisfying the requirements of paragraph (1). For purposes of paragraph (1), a taxpayer shall in any case be treated as having a reasonable basis for not treating an individual as an employee for a period if the taxpayer's treatment of such individual for such period was in reasonable reliance on any of the following:
>   (A) judicial precedent, published rulings, technical advice with respect to the taxpayer, or a letter ruling to the taxpayer;
>   (B) a past Internal Revenue Service audit of the taxpayer in which there was no assessment attributable to the treatment (for employment tax purposes) of the individuals holding positions substantially similar to the position held by this individual; or
>   (C) long-standing recognized practice of a significant segment of the industry in which such individual was engaged.
>  (3) Consistency required in the case of prior tax treatment. Paragraph (1) shall not apply with respect to the treatment of any individual for employment tax purposes for any period ending after December 31, 1978, if the taxpayer (or a predecessor) has treated any individual holding a substantially similar position as an employee for purposes of the employment taxes for any period beginning after December 31, 1977.
>  . . . .

Pub. L. No. 95-600, 92 Stat. 2885-2886 (reproduced as amended at 26 U.S.C. § 3401 note).

with its treatment of the employee as an independent contractor ("reporting consistency"), and (3) it had a reasonable basis for treating the employee as an independent contractor. *See supra* note 5; *Halfhill v. IRS*, 927 F. Supp. 171, 175 (W.D. Pa. 1996). Defendant contends that plaintiff fails to meet the reporting consistency requirement for 1996 because he did not timely file 1099 returns for his drivers for that year.[6] Defendant argues that under the "physical delivery rule," a return is filed when it is "physically delivered to, and received by the IRS…." *See Buttke v. United States*, 13 Cl. Ct. 191, 192 (1987). Defendant further argues that 26 U.S.C. § 7502(a) and (c) provide the only exceptions to this rule (timely postmark or "registered" mail), and that plaintiff cannot meet the rule or either exception. Plaintiff admits that he cannot prove timely delivery under the physical delivery rule or either § 7502 exception, but argues that he can prove timely delivery under the common law mailbox rule, which holds that proof of timely and proper mailing creates a presumption of timely delivery. *Anderson v. United States*, 966 F.2d 487, 489, 491 (9th Cir. 1992). However, this Court finds that § 7502 provides the only two exceptions to the physical delivery rule.

Section 7502(a) provides that if a return arrives late but is postmarked prior to the due date, the postmark date is the delivery date.[7] Section 7502(c)(1) provides that registration of a

---

[6] *See* 26 U.S.C. § 6041(a) (persons engaged in business must file 1099 returns with the IRS for all independent contractors that they pay $600 or more in a taxable year); 26 C.F.R. § 1.6041-1(a)(2) (taxpayers must make the return on form 1099); § 1.6041-6 (taxpayer must file 1099 returns by February 28 (or March 31 if electronically) of the following year). Defendant also argues that plaintiff fails to meet the reporting consistency requirement because he did not timely file a 1096 summary form for 1996. Plaintiff argues that a 1096 summary form is not a "return" for purposes of the reporting consistency requirement. This issue is moot because the Court finds that plaintiff failed to prove that he timely filed the 1099 returns.

[7] Section 7502(a) provides in full:

> (a) General rule.
> (1) Date of delivery. If any return, claim, statement, or other document required to be filed, or any payment required to be made, within a prescribed period or on or before a prescribed date under authority of any provision of the internal revenue laws is, after such period or such date, delivered by United States mail to the agency, officer, or office with which such return, claim, statement, or other document is required to be filed, or to which such payment is required to be made, the date of the United States postmark stamped on the cover in which such return, claim, statement, or other document, or payment, is mailed shall be deemed to be the date of delivery or the date of payment, as the case may be.
> (2) Mailing requirements. This subsection shall apply only if--
>   (A) the postmark date falls within the prescribed period or on or before the prescribed date--
>     (i) for the filing (including any extension granted for such filing) of the return, claim, statement, or other document, or
>     (ii) for making the payment (including any extension granted for making such payment), and
>   (B) the return, claim, statement, or other document, or payment was, within the time prescribed in subparagraph (A), deposited in the mail in the United States in an envelope or other appropriate wrapper, postage prepaid, properly addressed to the agency, officer, or office with which the

*Continued next page…*

4

mailing containing a return is prima facie evidence of delivery and the registration date is the postmark date, and § 7502(c)(2) allows the Secretary to extend § 7502(c)(1) to certified mail by regulation.[8] The Circuit Courts are split as to whether these are the only exceptions to the physical delivery rule. *See Miller v. United States*, 784 F.2d 728, 731 (6th Cir. 1986) (section 7502 sets out "the only exceptions to the physical delivery rule"); *Deutsch v. Commissioner*, 599 F.2d 44, 46 (2nd Cir. 1979) (same); *Anderson*, 966 F.2d at 491 (§ 7502 does not displace the common law mailbox rule); *Wood v. Commissioner*, 909 F.2d 1155, 1157, 1161 (8th Cir. 1990) (taxpayer could prove timely delivery through testimony). However, the Court of Federal Claims has consistently ruled that § 7502 provides the only exceptions. *Ygnatowiz v. United States*, No. 96-345T, 1997 WL 625502, at *4 (Fed. Cl. Aug. 5, 1997) (Margolis, J.) ("§ 7502 set[s] forth the *only* two exceptions to the physical delivery rule ….") (emphasis in original) (quoting *H.S. & H. Ltd. of Columbia ILL*, v. *United States*, 18 Cl. Ct. 241, 246 (1989)); *see also Buttke*, 13 Cl. Ct. at 192-193. "While this rule may seem harsh in some respects, it provides 'an easily applied, objective standard,'…." *Ygnatowiz*, at *4 n.8 (quoting *Deutsch*, 599 F.2d at 46).

The Federal Circuit considered the issue in *Davis v. United States*. There, the Court of Federal Claims had rejected a taxpayer's argument that he could prove timely mailing through the common law mailbox rule. 43 Fed. Cl. 92, 94 (1999). The Federal Circuit affirmed. 230 F.3d 1383 (Fed. Cir. 2000). In an unpublished opinion, it stated that since the taxpayer offered only "his own uncorroborated testimony…[he] could not establish jurisdiction under any view of the law," and "[e]ven if [he] were given the benefit of the more liberal approaches of the Eighth and Ninth Circuits, his own, uncorroborated testimony would be insufficient…." No. 99-5073, 2000 U.S. App. LEXIS 2302, at *7-8 (Fed. Cir. February 16, 2000). The Court noted that in *Wood*, the taxpayer presented the testimony of the postal worker that postmarked his mailing, and in *Anderson*, the taxpayer presented the testimony of a friend that accompanied her to the post office. *Id.* at 8; *see also Wood*, 909 F.2d at 1157; *Anderson*, 966 F.2d at 489. Although the

---

>return, claim, statement, or other document is required to be filed, or to which such payment is required to be made.

[8] Section 7502(c) provides in full:

>(c) Registered and certified mailing; electronic filing.
>  (1) Registered mail. For purposes of this section, if any return, claim, statement, or other document, or payment, is sent by United States registered mail--
>    (A) such registration shall be prima facie evidence that the return, claim, statement, or other document was delivered to the agency, officer, or office to which addressed; and
>    (B) the date of registration shall be deemed the postmark date.
>  (2) Certified mail; electronic filing. The Secretary is authorized to provide by regulations the extent to which the provisions of paragraph (1) with respect to prima facie evidence of delivery and the postmark date shall apply to certified mail and electronic filing.

5

Federal Circuit did not expressly adopt either rule, it did not reverse the longstanding Court of Federal Claims precedent that § 7502 contains the only exceptions to the physical delivery rule. Thus, this Court follows that precedent here.

Plaintiff admits that he cannot prove timely delivery under the physical delivery rule or either § 7502 exception. Thus, he cannot show reporting consistency and is not entitled to Section 530 relief.

### III. THE EVIDENCE AT TRIAL

Just as in *Davis*, even if plaintiff could invoke the common law mailbox rule, he would still fail to prove timely delivery of the 1099 returns for 1996. Plaintiff must prove timely delivery by a preponderance of evidence.[9] Under the mailbox rule, proof of timely and proper mailing creates a presumption of timely delivery. *Anderson*, 966 F.2d at 489, 491. However, plaintiff failed to prove timely and proper mailing at trial. Thus, even if plaintiff could invoke the mailbox rule, he would fail to trigger it and would not create a presumption of timely delivery. Also, the Court admitted documents tending to prove that defendant never received the 1099 returns, and plaintiff failed to rebut this evidence. Thus, plaintiff would fail to prove timely delivery by a preponderance of the evidence and would not be entitled to Section 530 relief.

#### A. Testimony

Plaintiff Severino Martinez testified as well as Elizabeth Sanchez, plaintiff's former employee.[10] The deposition of Alfonso Hernandez, plaintiff's former driver, was admitted into evidence. (Tr. at 130; Joint Stip., Ex. 16 at 7-8.)[11] However, this testimony does not prove timely and properly mailing.

##### 1. Plaintiff's testimony

Plaintiff's testimony was vague and unreliable. Plaintiff did not specifically remember putting the 1099 returns for 1996 in an envelope or mailing them.[12] He did not remember

---

[9] A party claiming Section 530 protection must establish Section 530's requirements by a preponderance of the evidence. *Springfield v. United States*, 88 F.3d 750, 753 (9th Cir. 1996).

[10] Plaintiff also offered the testimony of his daughter, Brenda Martinez, but the Court excluded her testimony because plaintiff did not notify defendant he was offering it until the day of trial, and her testimony would have been cumulative. (Tr. at 121-122, 129.)

[11] Plaintiff also attempted to admit the depositions of two other drivers. (Tr. at 131; Pl.'s Mot. To Utilize Depos. at Trial.) The Court is excluding these depositions in a separate order. (*See* January 5, 2012 Order.)

[12]     Q: Okay, after you typed the 1099s what happened then?
    A: [I] put in an envelope or my wife and send them to the IRS.
    …
    Q: And sir, do you specifically recall placing these 1099s in the envelope?

*Continued next page…*

whether he filed 1099 returns for his drivers for years 1997-1999 (for which the IRS has no record of receiving 1099 returns from plaintiff), a period longer and more recent than tax year 1996. (Tr. at 97.)[13] And he testified that during the relevant time period, he was extremely busy – taking a lot of work home, staying up late often, and handling a lot of paperwork. (*Id.* at 40, 91-92.)[14]

Plaintiff bases his belief that he mailed the 1099 returns for 1996 on his office practices. (*Id.* at 47.) He testified that he, his wife, and his daughter routinely typed bills of lading and routinely mailed them to customers. (*Id.* at 34-41.) They "immediately" put "everything" that they "typed or made out" in an envelope and they always mailed the envelopes because it was plaintiff's way of getting paid. (*Id.* at 37, 40, 47.) However, this evidence only shows a routine practice of typing and mailing invoices, not tax returns. Completing and mailing tax returns is a different process, and is done annually.

Also, plaintiff's testimony that he mailed "everything" he "typed or made out" is not credible. It would mean that he never prepared any documents that he delivered by hand or kept for his own records. Yet, when testifying about the three copies of 1099 returns that he prepared, he stated: "the ones for the drivers I see the ones that is still working for me, and I took it to work and put them with the paycheck for that week and the other one, I save it for my records and the one for the IRS, I put in an envelope or my wife…." (*Id.* at 46.) And regarding the bills of lading, he testified that he would first "print them out and then give them to the drivers that

---

        A: No.
        Q: You don't?
        A: No.

(Tr. at 46.)

        Q: And you don't have a specific memory of taking the 1099s to the Post Office that you described in mailing them do you?
        A: No, I don't.
        Q: And it's not your testimony that you were the one who did that, it could have been your wife?
        A: It could have been my wife.

(*Id.* at 90.)

[13] "THE COURT: … What do you establish now, do you believe to your knowledge that the corporation files all returns. THE WITNESS: Probably, I'm not sure. I'm real bad at years it's really hard for me to remember the years." (Tr. at 101.)

[14] Plaintiff hired Elizabeth Sanchez to help carry the workload, but she did not arrive until May 1997, after the returns were due. (Tr. at 91, 103, 115-116; *see also* 26 C.F.R § 1.6041-6.)

7

way they have it in hand." (*Id.* at 33.) Thus, the Court declines to find that plaintiff mailed the 1099s because he claims that he mailed every document that he prepared.

### 2.   Elizabeth Sanchez's Testimony

Elizabeth Sanchez testified that she did not have any knowledge regarding whether plaintiff filed 1099 returns for 1996. (*Id.* at 116.) Also, her testimony regarding plaintiff's mailing practices and her preparation of the 1099 returns for 1997 added little substance to plaintiff's testimony on these subjects and carries little weight because she did not begin working for plaintiff until May 1997, after the 1099 returns for 1996 were due. *See* 26 C.F.R § 1.6041-6.

### 3.   Alfonso Hernandez's Testimony

At his deposition, Alfonso Hernandez testified that he was a driver for plaintiff in 1996 and that plaintiff gave him his 1099 return for that year on time. (Joint Stip., Ex. 16 at 10, 19-20.) However, this does not prove that plaintiff mailed defendant its copy of the 1099 returns on time. Plaintiff could very well have delivered the drivers their copies so that they would not "get on [his] case," while neglecting to mail defendant its copies. (*See* Tr. at 48.)

### B.   Documents

Plaintiff did not offer any documents tending to prove timely and proper mailing. However, defendant's IRS Payer Master File ("PMF") transcripts show that the IRS did not receive any 1099 returns from plaintiff for tax years 1996-1999. Courts presume that such records are correct, but taxpayers may rebut this presumption. *Davis*, 43 Fed. Cl. at 94. Plaintiff concedes that these documents are authentic, but attempted to "impeach" their accuracy with three IRS documents. Plaintiff contends that these documents contain inaccuracies, proving that the PMF records might also be inaccurate. However, plaintiff first produced these documents to defendant on the day before trial, leaving defendant no opportunity to explain them. Thus, the Court gives little weight to any of the documents' seeming inaccuracies. Moreover, none of the statements that plaintiff focuses on relate to 1099 returns or to PMF transcripts.[15] Plaintiff has failed to prove timely delivery by a preponderance of the evidence even under the common law mailbox rule.

---

[15]   Exhibit 17 is a "Form 886-A" containing the following statement that plaintiff claims is incorrect: "IRS audit of tax year 1989 indicates that the taxpayer was issuing W2s." (Pl.'s Ex. 17; Tr. at 60, 63.) Exhibit 18 is a March 5, 1999 "Summary of Employment Tax Examination" showing that defendant assessed plaintiff the same amount of tax liability for both 1995 and 1996. (Pl.'s Ex. 18; Tr. at 68-69.) Plaintiff argues that this shows that defendant did not conduct "any kind" of examination of 1996 and just "tacked" on the 1995 numbers. (Tr. at 63.) Exhibit 19 is an October 20, 1999 letter from IRS Appeals Officer Alan Spiegel, which plaintiff claims restates the error in Exhibit 17. (Ex. 19; Tr. at 72.)

## IV. Conclusion

Plaintiff has failed to provide a viable defense to the 1996 assessment. Thus, plaintiff is not entitled to judgment on his claim and his complaint is dismissed, and the IRS is entitled to judgment on its counterclaim. The parties shall submit a joint stipulation to the Court by February 6, 2012 as to the amount of the judgment on defendant's counterclaim.

s/ Lawrence S. Margolis
LAWRENCE S. MARGOLIS
Senior Judge, U.S. Court of Federal Claims